E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SEAN D. PETERSON (Cal. Bar No. 274263)
Assistant United States Attorney
    Riverside Branch Office
    3403 10th Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6930
    Facsimile: (951) 276-6202
    E-mail:   Sean.Peterson2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT
12/20/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,

          v.

LEAE GROUP, INC.,
  aka Inland Empire Recycling,
  aka IER,

       Defendant.

ED CR No. 5:24-cr-00292-JGB

PLEA AGREEMENT FOR DEFENDANT LEAE GROUP, INC.

    1.   This constitutes the plea agreement between LEAE GROUP, INC. ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of defendant's commission of wire fraud involving "shorting weight" between December 2013 and April 2019.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

1    a.   Give up the right to indictment by a grand jury and,

2 at the earliest opportunity requested by the USAO and provided by the

3 Court, appear and plead guilty to a one-count information in the form

4 attached to this agreement as Exhibit A or a substantially similar

5 form, which charges defendant with wire fraud in violation of 18

6 U.S.C. § 1343.[1]

7    b.   Not contest facts agreed to in this agreement.

8    c.   Abide by all agreements regarding sentencing contained

9 in this agreement.

10    d.   Appear for all court appearances, surrender as ordered

11 for service of sentence, obey all conditions of any bond, and obey

12 any other ongoing court order in this matter.

13    e.   Not commit any crime; however, offenses that would be

14 excluded for sentencing purposes under United States Sentencing

15 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

16 within the scope of this agreement.

17    f.   Be truthful at all times with the United States

18 Probation and Pretrial Services Office and the Court.

19    g.   Pay the applicable special assessment at or before the

20 time of sentencing unless defendant has demonstrated a lack of

21 ability to pay such assessments.

22    h.   Unless Harrie Cohen first does so in his individual

23 capacity, at or before the time of sentencing, make a prejudgment

24 payment by delivering a certified check or money order to the Fiscal

25

26 ───────────────

27 [1] Exhibit A is an information charging defendant and Harrie
Cohen with wire fraud.  Defendant understands that this plea
agreement is not part of a "package deal" with Harrie Cohen, and, in

28 the event that Harrie Cohen does not separately waive indictment,
defendant will be solely named in the operative information.

Clerk of the Court in the amount of $742,291.42 to be applied to satisfy defendant's anticipated criminal debt.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

  i.  Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

  j.  Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

  k.  Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

  l.  Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

<u>THE USAO'S OBLIGATIONS</u>

3.  The USAO agrees to:

  a.  Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>COMPANY AUTHORIZATION</u>

4.    Defendant represents that it is authorized to enter into this agreement.  On or before the change of plea hearing pursuant to this agreement, defendant shall provide the USAO and the Court with a notarized legal document certifying that defendant is authorized to enter into and comply with all of the provisions of this agreement. Such resolution(s) shall designate a company representative who is authorized to take the actions specified in this agreement, including pleading guilty on behalf of the company.  Such documents shall also state that all legal formalities for such authorizations have been observed.

<u>ORGANIZATIONAL CHANGES AND APPLICABILITY</u>

5.    This agreement shall bind defendant, its successor entities (if any), parent companies, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest"). Defendant, or its successors-in-interest, if applicable, shall provide the USAO and the United States Probation and Pretrial Services Office for the Central District of California with immediate notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting their

4

1   ability to pay the fine or comply with any forfeiture obligations or
2   otherwise affecting this agreement.  No change in name, change in
3   corporate or individual control, business reorganization, change in
4   ownership, merger, change of legal status, sale or purchase of
5   assets, or similar action shall alter defendant's responsibilities
6   under this agreement.  Defendant shall not engage in any action to
7   seek to avoid the obligations and conditions set forth in this
8   agreement.

9                          NATURE OF THE OFFENSE

10       6.   Defendant understands that for defendant to be guilty of
11  the crime charged in the sole count of the information, that is, wire
12  fraud, in violation of Title 18, United States Code, Section 1343,
13  the following must be true: first, defendant knowingly participated
14  in and devised a scheme or plan to defraud, or a scheme or plan for
15  obtaining money or property by means of false or fraudulent
16  pretenses, representations, or promises; second, the statements made
17  as part of the scheme were material; that is, they had a natural
18  tendency to influence, or were capable of influencing, a person to
19  part with money or property; third, defendant acted with the intent
20  to defraud, that is, the intent to deceive and cheat; and fourth,
21  defendant used, or caused to be used, an interstate wire
22  communication to carry out or attempt to carry out an essential part
23  of the scheme.

24                     PENALTIES AND RESTITUTION

25       7.   Defendant understands that the statutory maximum sentence
26  that the Court can impose for a violation of Title 18, United States
27  Code, Section 1343, is: 5 years probation; a fine of $500,000 or

28

                                    5

twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty.  The parties currently believe that the applicable amount of restitution is approximately $742,291.42, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

9.   Defendant understands that the conviction in this case may subject defendant to various collateral consequences, including, but not limited to, suspension or revocation of any license, permit or status granted to defendant by a government agency.  Defendant understands that unanticipated collateral consequences such as this will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

10.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the

6

Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Defendant, LEAE GROUP, INC., did business as Inland Empire Recycling, or IER (hereinafter IER).  Harrie Cohen was defendant's principal owner, Chief Executive Officer, Secretary, Chief Financial Officer, and all-around top decision maker; Harrie Cohen directed all of defendant's employees and agents.  Defendant functioned as a middleman or dealer in the scrap metal recycling business.  Defendant obtained scrap metal from different sources, including businesses that generated scrap metal as part of their manufacturing processes.

Beginning on an unknown date, but no later than in or around December 2013, and continuing until at least in or around April 2019, in San Bernardino County, within the Central District of California, and elsewhere, defendant, and others, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Defendant's scrap metal recycling customers by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

After obtaining scrap metal from its customers, Defendant would take the scrap metal to a larger "downstream" scrap metal recycler, which in turn would sell the scrap metal to a mill so that the metal could be melted down for new use.  When accepting scrap metal from Defendant, the downstream recycler would provide Defendant with a certified weight ticket, which reflected the type of metal accepted, and the weight of that metal; Defendant would be paid for the scrap metal based on its type and weight.

1    At Harrie Cohen's direction, Defendant's employees and

2    representatives would quote certain customers and prospective

3    customers a price for their scrap metal below the market price for

4    that metal, even though Defendant would not be able to re-sell the

5    metal for that price.  Defendant's employees would pick up the scrap

6    metal from Defendant's customers, and transport that metal to another

7    recycling business, which would weigh the scrap metal, create a

8    certified weight ticket reflecting the weight and type of scrap

9    metal, and pay Defendant for the scrap metal.

10    At Harrie Cohen's direction, Defendant's employees would create

11    fraudulent certified weight tickets for Defendant's customers,

12    reflecting a lower weight of scrap metal than was actually received

13    from the customer, thereby "shorting weight" on the certified weight

14    ticket.  Defendant's employees would also input, access, and retain

15    two sets of records for weights— "settle weight" and "our weight" —

16    reflecting the actual weight, and the weight reported to Defendant's

17    client, which were retained on a third-party server, accessible

18    through the internet, by one of Defendant's employees.

19    Defendant would provide its customers with the fraudulent

20    certified weight tickets, and other records falsely reporting the

21    weight of the scrap metal as below its actual weight.  IER would pay

22    its customers based on the fraudulent reported weight, rather than

23    the actual weight, thereby shorting the customer of money that was

24    due to the customer for the scrap metal it provided to defendant, and

25    tricking the customer into believing that it had provided less scrap

26    metal than it had actually provided.  In total, as a result of this

27    shorting of weight scheme, defendant, at the direction of Harrie

28

Cohen, defrauded Defendant's customers of at least approximately $742,291.42.

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. §§ 3553(a) and 3572.  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) and § 3572 factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.  Defendant and the USAO agree to the following applicable offense level under U.S.S.G. § 8C2.3 of the Sentencing Guidelines:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss > $550,000 | 14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| 10 or more Victims: | 2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

1                    WAIVER OF CONSTITUTIONAL RIGHTS

2        14.   Defendant understands that by pleading guilty, defendant

3   gives up the following rights:

4             a.    The right to persist in a plea of not guilty.

5             b.    The right to a speedy and public trial by jury.

6             c.    The right to be represented by counsel at trial.

7   Defendant understands, however, that, defendant retains the right to

8   be represented by counsel at every other stage of the proceeding.

9             d.    The right to be presumed innocent and to have the

10  burden of proof placed on the government to prove defendant guilty

11  beyond a reasonable doubt.

12            e.    The right to confront and cross-examine witnesses

13  against defendant.

14            f.    The right to present evidence in opposition to the

15  charges, including the right to compel the attendance of witnesses to

16  testify.

17            g.    The right, if defendant chose not to present evidence,

18  to have that choice not be used against defendant.

19            h.    Any and all rights to pursue any affirmative defenses,

20  Fourth Amendment or Fifth Amendment claims, and other pretrial

21  motions that have been filed or could be filed.

22                    WAIVER OF STATUTE OF LIMITATIONS

23       15.   Having been fully advised by defendant's attorney regarding

24  application of the statute of limitations to the offense to which

25  defendant is pleading guilty, defendant hereby knowingly,

26  voluntarily, and intelligently waives, relinquishes, and gives up:

27  (a) any right that defendant might have not to be prosecuted for the

28  offense to which defendant is pleading guilty  because of the

                                    10

expiration of the statute of limitations for that offense prior to the filing of the information alleging that offense; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offense to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

17.  Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the fine imposed by the Court, provided it is within the statutory maximum; (c) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (d) the amount and terms of any restitution order; (e) the term of probation imposed by the Court, provided it is within the statutory maximum; and (f) any of the conditions of probation imposed by the Court.

18.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including

any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

19. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a fine of no less than $1,000,000, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy

trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing this
agreement.

## EFFECTIVE DATE OF AGREEMENT

21.  This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

## BREACH OF AGREEMENT

22.  Defendant agrees that if defendant, at any time after the
signature of this agreement and execution of all required
certifications by defendant, defendant's counsel, and an Assistant
United States Attorney, knowingly violates or fails to perform any of
defendant's obligations under this agreement ("a breach"), the USAO
may declare this agreement breached.  All of defendant's obligations
are material, a single breach of this agreement is sufficient for the
USAO to declare a breach, and defendant shall not be deemed to have
cured a breach without the express agreement of the USAO in writing.
If the USAO declares this agreement breached, and the Court finds
such a breach to have occurred, then: (a) if defendant has previously
entered a guilty plea pursuant to this agreement, defendant will not
be able to withdraw the guilty plea, and (b) the USAO will be
relieved of all its obligations under this agreement.

23.  Following the Court's finding of a knowing breach of this
agreement by defendant, should the USAO choose to pursue any charge
that was either dismissed or not filed as a result of this agreement,
then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant through defendant's representative, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES</u>

24.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

14

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

27.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

1   promise, understanding, or agreement may be entered into unless in a

2   writing signed by all parties or on the record in court.

3                 PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4        28.  The parties agree that this agreement will be considered

5   part of the record of defendant's guilty plea hearing as if the

6   entire agreement had been read into the record of the proceeding.

7   AGREED AND ACCEPTED

8   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
9   CALIFORNIA

10  E. MARTIN ESTRADA
    United States Attorney

11

12  _____          12/17/24
    SEAN D. PETERSON                           Date
13  Assistant United States Attorney

14  _____          12/13/24
    LEAE GROUP, INC.                           Date
15  Defendant
    By HARRIE COHEN,
16  Authorized Representative

17  _____          12/13/24
    EDWARD ROBINSON                            Date
18  Attorney for Defendant
    LEAE GROUP, INC.

19

20

21

22                     CERTIFICATION OF DEFENDANT

23       I have the authority to act on behalf of defendant LEAE GROUP,

24  INC., including entering this agreement on LEAE GROUP, INC.'s behalf.

25  I have read this agreement in its entirety.  I have had enough time

26  to review and consider this agreement, and I have carefully and

27  thoroughly discussed every part of it with LEAE GROUP, INC.'s

28  attorney.  I understand the terms of this agreement, and I

                                    16

1  voluntarily agree to those terms on LEAE GROUP, INC.'s behalf. I

2  have discussed the evidence against LEAE GROUP, INC. with LEAE GROUP,

3  INC.'s attorney, and LEAE GROUP, INC.'s attorney has advised me of

4  LEAE GROUP, INC.'s rights, of possible pretrial motions that might be

5  filed, of possible defenses that might be asserted either prior to or

6  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

7  of relevant Sentencing Guidelines provisions, and of the consequences

8  of entering into this agreement. No promises, inducements, or

9  representations of any kind have been made to me or LEAE GROUP, INC.

10  other than those contained in this agreement. No one has threatened

11  or forced me or LEAE GROUP, INC. in any way to enter into this

12  agreement. LEAE GROUP, INC. and I are satisfied with the

13  representation of LEAE GROUP, INC.'s attorney in this matter, and

14  LEAE GROUP, INC. is entering a guilty plea because LEAE GROUP, INC.

15  is guilty of the charge and LEAE GROUP, INC. wishes to take advantage

16  of the promises set forth in this agreement, and not for any other

17  reason.

18  _____          ____12/13/24____

19  HARRIE COHEN                              Date

20  Representative of Defendant
   LEAE GROUP, INC.

21

22

23                    CERTIFICATION OF DEFENDANT'S ATTORNEY

24       I am LEAE GROUP, INC.'s attorney. I have carefully and

25  thoroughly discussed every part of this agreement with my client's

26  authorized representative Harrie Cohen. Further, I have fully

27  advised my client's authorized representative of my client's rights,

28  of possible pretrial motions that might be filed, of possible

                                      17

defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client or my client's authorized representative other than those contained in this agreement; no one has threatened or forced my client or my client's authorized representative in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____     12/13/24
EDWARD ROBINSON                     Date
Attorney for Defendant
GROUP, INC.

18

# Exhibit 1

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>LEAE GROUP, INC.,<br>   aka Inland Empire Recycling,<br>   aka IER, and<br>HARRIE COHEN,<br><br>           Defendants. | ED CR No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1343: Wire Fraud; 18<br>U.S.C. § 982: Criminal Forfeiture] |

The United States Attorney charges:

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant LEAE GROUP, INC., an incorporated entity with its principal place of business located in Ontario, California, doing business as Inland Empire Recycling, and also known as IER ("defendant IER"), functioned as a "middleman" or scrap metal dealer in the scrap metal recycling business.

2.   As a middleman, defendant IER obtained scrap metal, including steel and aluminum, among other types of scrap metal, from

different sources, including businesses that generated scrap metal as part of their manufacturing processes.

3.    After obtaining scrap metal from its customers, defendant IER would take the scrap metal to a larger "downstream" scrap metal recycler, which in turn would sell the scrap metal to a mill so that the metal could be melted down for new use.

4.    When accepting scrap metal from defendant IER, the downstream recycler would provide IER with a certified weight ticket, which reflected the type of metal accepted, and the weight of that metal; defendant IER would be paid for the scrap metal based on its type and weight.

5.    Defendant HARRIE COHEN was the principal owner and operator of defendant IER.

B.    SCHEME TO DEFRAUD

6.    Beginning on an unknown date, but no later than in or around December 2013, and continuing until at least in or around April 2019, in San Bernardino County, within the Central District of California, and elsewhere, defendants IER and HARRIE COHEN, and others known and unknown, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud defendant IER's scrap metal recycling customers by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

C.    MEANS TO ACCOMPLISH THE FRAUDULENT SCHEME

7.    The fraudulent scheme operated and was carried out, in substance, as follows:

a.    At defendant COHEN's direction, defendant IER's employees and representatives would quote certain customers and

2

prospective customers a price for their scrap metal below the market price for that metal, even though defendant IER would not be able to re-sell the metal for that price.

　　　b.　Defendant IER's employees would pick up scrap metal from defendant IER's customers, and transport that metal to another recycling business, which would weigh the scrap metal, create a certified weight ticket reflecting the weight and type of scrap metal, and pay defendant IER for the scrap metal.

　　　c.　At defendant COHEN's direction, defendant IER's employees would create fraudulent certified weight tickets for defendant IER's customers, reflecting a lower weight of scrap metal than was actually received from the customer, thereby "shorting weight" on the certified weight ticket.

　　　d.　At defendant COHEN's direction, defendant IER's employees would also input, access, and retain two sets of records for weights—"settle weight" and "our weight"—reflecting the actual weight, and the weight reported to defendant IER's client, which were retained on a third-party server, accessible through the internet, by one of defendant IER's employees.

　　　e.　Defendant IER would provide its customers with the fraudulent certified weight tickets, and other records falsely reporting the weight of the scrap metal as below its actual weight.

　　　f.　Defendant IER would pay its customers based on the fraudulent reported weight, rather than the actual weight, thereby shorting the customer of money that was due to the customer for the scrap metal it provided to defendant IER.

8.   In total, as a result of this shorting of weight scheme, defendants IER and COHEN defrauded defendant IER's customers of at least approximately $742,291.42.

D.   <u>USE OF WIRES</u>

9.   On or about December 7, 2018, in San Bernardino County, within the Central District of California, and elsewhere, defendants IER and COHEN, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of a wire communication in interstate commerce, resulting in the transfer of $11,416.35, namely, defendants IER and COHEN caused the transmission of a wire transfer from an Ontario, California-based City National Bank Account ending in 0725, to a customer's Atlantic Capital Bank Account, located in the State of Georgia.

1          FORFEITURE ALLEGATION

2           [18 U.S.C. § 982]

3      1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 982(a)(2), in the event of the

7  defendant's conviction of the offense set forth in this Information.

8      2.    The defendant, if so convicted, shall forfeit to the United

9  States of America the following:

10          (a) All right, title and interest in any and all property,

11  real or personal, constituting, or derived from, any proceeds

12  obtained, directly or indirectly, as a result of the offense; and

13          (b) To the extent such property is not available for

14  forfeiture, a sum of money equal to the total value of the property

15  described in subparagraph (a).

16     3.    Pursuant to Title 21, United States Code, Section 853(p),

17  as incorporated by Title 18, United States Code, Section 982(b), the

18  defendant, if so convicted, shall forfeit substitute property, up to

19  the total value of the property described in the preceding paragraph

20  if, as the result of any act or omission of the defendant, the

21  property described in the preceding paragraph, or any portion

22  thereof: (a) cannot be located upon the exercise of due diligence;

23  (b) has been transferred, sold to or deposited with a third party;

24  ///

25

26

27

28

5

(c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.


E. MARTIN ESTRADA
United States Attorney


MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

SEAN D. PETERSON
Assistant United States Attorney
Riverside Branch Office